## STEAMBOAT ROBERT MORRIS AND OWNER v. WILLIAMSON.

1. The lien given on a steam-boat, by the act of 1836, for failing to deliver goods as specified in the bill of lading, continues until the first day of July next after the non-delivery, according to the terms of the bill.
2. The lien thus created, when goods are damaged, is not waived by their acceptance by the consignee or owner; nor by a receipt specifying that they have been received in good order   To make a waiver there must be a knowledge of the injury, and an intention to abandon a remedy; or some contract which is in consistent with the existence of the lien.

APPEAL from the County Court of Sumter county.

THIS is a proceeding, by way of libel, commenced on the 18th day of March, 1840, against the steamboat Robert Morris, which, after seizure, was claimed and stipulated for by Alphonso Brooks.

The libel charges, that certain goods, on the 28th day of December, 1839, were shipped on board the steamboat, at Mobile, in good order, to be delivered in like good order, at Gainesville, to one Lewis, the dangers of the river only excepted, he paying freight therefor at the rate of one dollar and fifty cents per barrel.   The contract of freight is evidenced by bill of lading, which is exhibited, and the ownership of the goods is alleged to have been in Williamson.   The goods are alleged to have been damaged, to a considerable extent, on the trip, and not delivered in good order.   Condemnation of the steamboat, &c., is prayed in compensation of the damage incurred.

The answer of the claimant denied the allegations of the libel, and prayed that a jury might inquire of the same.

It also sets up other matters of defence, which may be thus stated.

1st. That the goods were caused to be delivered by the steamboat according to the undertaking, and were received on account of the libellant at Gainesville, and were received by him.

2. That the goods were received by the libellant without ex-

ception thereto; and thereby, he then and there released and discharged all claim and lien on such boat.

3. That if the goods were damaged, it was caused by the dangers of the river, and not otherwise.

4. That ne ther Lewis, the consignee, nor the said libellant paid, or offered to pay, the freight, or any part of it, on said goods, and that the same remains unpaid.

5. That the libellant ought to be barred of this judgment, because he did not proceed to trial at the first term of the court after filing his libel.

The case was submitted to the jury on the libel and answer, without any exception by either party, and a verdict was returned for the libellant, assessing his damages at 436 dollars; for which, judgment of condemnation against the steamboat was rendered, and also against the stipulators, it having been discharged on bond.

At the trial, the shipment of the goods was proved by the production of the bill of lading containing the contract recited in the libel. It was also proved, that the steamboat proceeded on her trip from Mobile no further than Demopolis, where, the water failing, she transferred the goods to the steamboat Favorite, without the knowledge or consent of the libellant, to be by her delivered at Gainesville, whither she proceeded with them. The goods were so much damaged when taken on board, that the Favorite would give no bill of lading for them, and were in such a damaged condition that some of the boxes containing them were split and broken, and had the appearance of having been wet. The contents of the boxes seemed to be wet to some extent; but they were not opened until after being received, and after the libellant had given for them a receipt, stating that he had received them from the Favorite in good order. The libellant was advised, before receiving the goods, not to receive them, on the ground that they were damaged; but he replied, he had just come to the country, and it might be said he was inclined to be difficult to please, or the like; and, therefore, he would take them, and pay the freight. The freight on the goods was estimated at 285 90-100 dollars, of which sum the libellant paid 65 dollars, and applied to borrow the remainder, but did not obtain it; and it remained unpaid. There was no proof that he had tendered the balance due of the freight money. The day after receiving the

goods, they were examined, and found to be much damaged, and injured forty per cent. of their value. The goods consisted of household furniture of great value, and were contained in boxes and barrels, and, thereby, their condition could not be readily discovered, or the full extent of the injury known.

On this state of proof, the defendant requested the court to instruct the jury,

1. That if the goods were delivered by the steamboat Favorite, for the steamboat Robert Morris, and were received by the libellant without any exception, then no lien existed afterwards against the last named boat.

This the court refused; but instructed the jury, that a lien would exist against that boat to the extent of the damage sustained, if that damage was done on the Robert Morris, unless the libellant had expressly waived his right after being advised of the extent of the injury.

2. That if the libellant received the goods at Gainesville, from the steamboat Favorite, knowing they were damaged, and without making exception, then, that the lien on the Robert Morris was thereby discharged, although the libellant had not ascertained, by examination, the full extent of the injury done them.

This was refused; but the jury was instructed, that no lien would exist in such a case for the damages which the libellant had ascertained when he received the goods; but that a lien did exist for any damages the goods received after they were put on board the Robert Morris, and before they were delivered at Gainesville, and which the libellant had not ascertained at the time he received the goods from the Favorite.

3. That if the boxes containing the goods plainly indicated, by their appearance, that the contents were damaged, and the libellant, having the opportunity, neglected to make the examination, but received the goods without making exception, then he could not enforce a lien against the Robert Morris for injuries sustained by the goods upon their conveyance.

This was refused, without any attempt to modify it.

4. That it was incumbent on the libellant, before he could sustain this proceeding, to show that he had paid, or tendered, the entire freight on the goods.

This was refused; and the jury was instructed, that the boat

was bound to deliver the goods according to the bill of lading, before it could demand freight on them.

5. That it was incumbent on the libellant, under the allegations of the libel, to prove he was prepared to pay the freight before he commenced this suit.

This was refused; and the jury was instructed, that if the boat had parted with the possession of the goods, it had thereby lost its lien on them for the freight, and it was unnecessary for the libellant to prove a tender or payment, or a readiness to pay the freight.

The claimant excepted to the refusal to give the charges requested, and, also, to those given; and having appealed from the judgment rendered against him, here assigns error in the bill of exceptions.

BLISS, for the plaintiff in error, insisted that the lien upon the boat was waived by the libellant receiving the goods without exception. If no presumption of waiver arose from receiving the goods, it certainly did when the libellant acknowledged in writing, that he had received them from the Favorite in good order. If such is the effect of the admission, the charge given in response to that requested in the first instance, is manifestly erroneous. Under the circumstances of the case, it should have been left to the jury to determine whether the conduct of the libellant was a waiver of the lien.

METCALFE, contra, contended, that, if there was injury sustained, the lien could only be discharged by an express waiver. The statute continues the lien until the 1st day of July after the lien attaches. [Clay's Digest, 139, § 22, 23, 24.] Where a statute creates a lien, it is not waived by an express contract, unless the contract is inconsistent with the lien. [Peyroux v. Howard, 7 Peters, 324.] In the ordinary case of supplies furnished, and a credit given, the lien is not waived when the supplies are furnished to a foreign ship. [Brig Nelson, 1 Sumner, 73.] These cases establish, that the notion of waiver can only arise when such is the intention of the party.

GOLDTHWAITE, J.—1. It is not pretended by the libellant's counsel, that there is any lien on the steamboat independ-

ent of the statute ; and the claimant insists that, even if a lien is thus given, that it must be considered as having been waived under the circumstances shown in evidence.

The act of 1836, [Clay's Digest, 139,] after giving a lien upon steamboats, or other water craft, to any person who shall furnish materials, labor or stores for their use, provides that, if such lien shall not be enforced on or before the first day of July then next ensuing the furnishing of such materials, &c., such lien shall cease to exist. It provides, also, that this lien shall be enforced in any court having jurisdiction of the amount due; and specifies how the boat, &c., may be replevied. The section of the act, which is supposed to govern this case, is in these terms : "Whenever any steamboat, or other water craft, shall receive on board any goods, wares, or merchandise, as freight, to be delivered at any specified landing, and shall fail to deliver the same as specified by the bill of lading, the owner or consignee of such goods, wares or merchandise shall be entitled to a lien on such boat or other water craft, to be sued for and recovered in like manner."

It is not probable the Legislature intended to provide only for a total loss of the goods shipped ; for that, although somewhat common, was by no means the most frequent cause of loss to the shipper. When goods, which have been received in good order, and, by the terms of the bill of lading, are to be delivered, have been injured on board the craft, and the injury is not within the exceptions contained in the bill of lading, they can never be delivered " as specified by the bill of lading"; such an injury is then within the words, as well as the spirit of the enactment.

We think the statute intended to make this, as well as all the other liens created by it, determinable on the first day of July, although that day is only mentioned in connexion with materials, &c., furnished. We are induced to this conclusion because, if the lien was to determine with the departure of the boat, it would be ineffectual in all but a very few cases ; as it is notorious they leave, in most cases, within a few minutes, frequently within a few seconds of the delivery.

It never could have been intended to make the lien, in cases of injury, dependent upon the sailing of the craft, as it is by the course of the admiralty law. It would be equally inconsistent to suppose the lien was always to continue ; for this would effectually impede all sales of vessels of this description. We con-

.clude, then, that liens of this description, in general, are lost, if not enforced by the 1st of July, after the injury ; though there may be cases which, from their peculiar circumstances, would create an exception, by continuing the lien until an opportunity could be afforded for a seizure.

2. The instructions of the county court, with respect to the supposed waiver of the lien, must be understood in connexion with the circumstances in evidence: and it would have been proper to have charged the jury, that these did not amount to a waiver. Indeed, it is difficult to imagine how one can waive a matter of which he is ignorant.

We think no presumption of waiver can arise, unless the party has a knowledge of some injury sustained, and some act is done with the intention to waive the peculiar remedy ; or, unless there is a specific contract inconsistent with the existence of the lien. [Peyroux v. Howard, 7 Peters, 324. Brig Nelson, 1 Sumner, 73.]

It is evident, that the facts of this case do not bring it within any of these principles ; and that they do not warrant the instructions requested by the claimant. Therefore, although the charges given may not be entirely correct, in the broad terms in which some of them are announced, yet they had no tendency to mislead the jury when considered in connexion with the evidence. In this connexion, they may be considered as free from any error which could affect the verdict.

Judgment affirmed.